IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

RONNIE D. KELLY,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,

        Defendant.

No. C10-2075

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.  Kelly's Education and Employment Background . . . . . . . . . . . . 5
     B.  Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . 6
         1.  Kelly's Testimony . . . . . . . . . . . . . . . . . . . . . . . 6
         2.  Vocational Expert Testimony . . . . . . . . . . . . . . . . . . 7
     C.  Kelly's Medical History . . . . . . . . . . . . . . . . . . . . . . 8

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 13
     A.  ALJ's Disability Determination . . . . . . . . . . . . . . . . . . 13
     B.  Objections Raised by Claimant . . . . . . . . . . . . . . . . . . . 15
         1.  Credibility Determination . . . . . . . . . . . . . . . . . . . 15
         2.  Dr. Koo's Opinions . . . . . . . . . . . . . . . . . . . . . . 18
         3.  Hypothetical Question . . . . . . . . . . . . . . . . . . . . . 21
     C.  Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Ronnie D. Kelly on December 21, 2010, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Kelly asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Kelly requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On September 21, 2007, Kelly applied for both disability insurance benefits and SSI benefits. In his applications, Kelly alleged an inability to work since September 17, 2007 due to right-sided weakness, severe clinical depression, heart attacks, and residuals following a stroke, including loss of short term memory, vocabulary, speech, comprehension, self-confidence, and mental capacity. On September 28, 2007, Kelly's application for SSI benefits was denied because he was found to be ineligible for such benefits. Kelly's application for disability insurance benefits was initially denied on March 3, 2008. On May 2, 2009, the application was denied on reconsideration.[1] Kelly filed a new application for SSI benefits on October 3, 2008. The record lacks any information regarding when Kelly's second application for SSI benefits was denied initially or on reconsideration. However, the ALJ, in his decision reported that the applications for both disability insurance benefits and SSI benefits were protectively filed on September 17, 2007.[2] The ALJ further reported that the "claims were denied initially on March 3, 2008,

---

[1] Because Kelly filed his request for hearing before an administrative law judge ("ALJ") on June 4, 2008, the Court assumes that the date May 2, 2009 is a typographical error and should be May 2, 2008.

[2] See Administrative Record at 10.

and upon reconsideration on May 28, 2008."[3] While the record is unclear as the dates that Kelly's applications were denied both initially and on reconsideration, the Court assumes for purposes of this case that Kelly's applications were denied initially and on reconsideration at some time prior to his request for a hearing before an ALJ.

On June 4, 2008, Kelly requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 8, 2009, Kelly appeared via video conference with his attorney before ALJ John E. Sandbothe for an administrative hearing. Kelly and vocational expert Marian S. Jacobs testified at the hearing. In a decision dated December 3, 2009, the ALJ denied Kelly's claims. The ALJ determined that Kelly was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Kelly appealed the ALJ's decision. On November 8, 2010, the Appeals Council denied Kelly's request for review. Consequently, the ALJ's December 3, 2009 decision was adopted as the Commissioner's final decision.

On December 21, 2010, Kelly filed this action for judicial review. The Commissioner filed an Answer on February 22, 2011. On March 31, 2011, Kelly filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On May 18, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On May 27, 2011, Kelly filed a reply brief. On February 7, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

---

[3] *Id.* Interestingly, the ALJ indicated that both applications were denied on reconsideration on May 28, 2008, while the record indicates that Kelly's disability insurance benefits application was denied on reconsideration on a different date. *See Id.* at 19. However, as noted in footnote 1, the date on the reconsideration notice appears to be in error.

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that

4

decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth
Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the
> evidence and it allows for the possibility of drawing two
> inconsistent conclusions, thus it embodies a zone of choice
> within which the [Commissioner] may decide to grant or deny
> benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland
v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir.
2007), the Eighth Circuit further explained that a court "will not disturb the denial of
benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.*
at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because
[a court] may have reached a different conclusion had [the court] been the fact finder in
the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore,
"even if inconsistent conclusions may be drawn from the evidence, the agency's decision
will be upheld if it is supported by substantial evidence on the record as a whole."
*Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir.
1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's
decision, we will not reverse the decision merely because substantial evidence would have
also supported a contrary outcome, or because we would have decided differently.");
*Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to
support the Commissioner's conclusion, we may not reverse even though there may also
be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d
922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Kelly's Education and Employment Background

Kelly was born in 1958. He is a high school graduate. The record contains a
detailed earnings report for Kelly. The report covers Kelly's employment history from

1989 to 2009. From 1989 to 2007, Kelly earned between $32,726.65 (1989) and $83,335.64 (2004). He has no earnings since 2008.

## B. Administrative Hearing Testimony

### 1. Kelly's Testimony

At the administrative hearing, Kelly's attorney asked Kelly why he believed he was unable to work. Kelly explained that in 2006, he had a stroke, and since that time he has had significant difficulty with remembering things. Specifically, Kelly testified that since his stroke "the right side of my body is numb. I don't have any memory, and I have no taste, it's just been taken away from me."[4]

Kelly's attorney also asked Kelly to describe his functional abilities:

Q: How does the ride side weakness affect you? How much can you lift on your right side?
A: 10 pounds.
Q: If you had to do that all day long, could you do it all day long?
A: No, no.
Q: And on your left side you're still able to, to lift?
A: Yeah. . . .
Q: Okay, and what problems do you have with your memory?
A: Well, like I walked into your office yesterday and the secretary asked me who I was to see, I don't even remember. I, Hugh Fields is his name.
Q: But you didn't remember that, you had to --
A: No, I had to ask my wife. . . .
Q: Okay. And how long can, do you have problems with standing?
A: Well, I don't stand three, four hours a day. I, I don't think I, I just don't know if I can do it or not.
Q: Okay. And what about sitting, how long can you sit?
A: I don't know, four, four to six hours a day I can sit.

(Administrative Record at 851-52.)

---

[4] *See* Administrative Record at 850-51.

The ALJ also asked Kelly some questions regarding his functional abilities:

> Q: How much do you think you can lift, using one, two, either or, or both hands, how much do you think you can comfortably lift on an occasional basis, say once or twice an hour?
>
> A: 20 pounds.
>
> Q: Okay. And how about, how long can you stand on your feet, just milling about at a time?
>
> A: Four hours. . . .
>
> Q: How far can you walk at a time before you'd need to sit down, or your feet would hurt, or whatever?
>
> A: I'd say two blocks or 100 yards.
>
> Q: And then what would happen?
>
> A: I get short of breath.
>
> Q: Okay. And how about sitting? How long can you sit at a time in a work chair?
>
> A: I, you know, I just don't --
>
> Q: A chair like you're in right now.
>
> A: Two to, two to three hours.

(Administrative Record at 858-59.)

## 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Marian S. Jacobs with a hypothetical for an individual who:

> can lift 20 pounds occasionally, 10 pounds frequently. [The individual] can only occasionally balance, stoop, crouch, kneel, crawl, or climb and he'd be limited to simple routine repetitive work, superficial contact with the public, regular pace.

(Administrative Record at 861.) The vocational expert testified that under such limitations, Kelly could not perform his past relevant work. The vocational expert further testified that Kelly could perform the following work: (1) laundry folder (450 positions in Iowa and 35,000 positions in the nation), (2) labeler (2,000 positions in Iowa and 85,000 positions in the nation), and (3) router (1,485 positions in Iowa and 142,000 positions in the nation). The ALJ asked a second hypothetical which was identical to the first hypothetical except

that the individual would need to elevate his or her legs half the day and would require working at a slow pace with close supervision for one-third of an eight-hour workday. The vocational expert testified that under such limitations, Kelly would be precluded from competitive work.

### C. Kelly's Medical History

On August 3, 2006, Kelly was taken to the emergency room at Mercy Hospital in Oelwein, Iowa, after becoming unresponsive at a family gathering. At the emergency room, doctors determined that Kelly had suffered a left cerebral stroke. Kelly was airlifted to the University of Iowa Hospitals and Clinics ("UIHC") for further treatment. Kelly was discharged from UIHC on August 10, 2006. At the time of discharge, Dr. Jyoti Pundlik, Ph.D., performed a neuropsychological examination on Kelly. Dr. Pundlik found that Kelly had moderate global aphasia with significant speech deficits. Kelly was discharged to a rehabilitation unit in Waterloo, Iowa for physical, occupational, and speech therapy.

In September 2006, Kelly was examined by Dr. Robert H. Hoyt, M.D., for cardiovascular problems. Dr. Hoyt noted that in 2002, Kelly had acute anterior myocardial infarction with cardiac catheterization showing occlusion of the proximal left anterior descending coronary artery. Dr. Hoyt further noted that in conjunction with his stroke in August 2006, doctors at UIHC also performed carotid stenting. Upon examination, Dr. Hoyt found that Kelly had moderate heart failure symptoms, and determined that Kelly was a good candidate for a prophylactic defibrillator to be implanted in his heart. On October 23, 2006, Dr. Hoyt implanted a biventricular defibrillator in Kelly.

On March 14, 2007, Kelly met with Dr. Harold P. Adams, M.D., for a neurological follow-up appointment. Dr. Adams found that Kelly "has made a remarkable recovery from his very severe stroke. He still has some mild residual problems. He noticed some trouble with his right leg. He also has some trouble with short-term

memory. However, he has been able to return to work and manage his business."[5] Upon examination, Dr. Adams noted that Kelly "does have some hesitancy and slowness of speech. . . . He does have some clumsiness of the right upper extremity and right lower extremity."[6] Dr. Adams concluded that he was "very pleased" with Kelly's "degree of recovery," and continued Kelly's medications as treatment.

On August 3, 2007, Kelly met with Dr. Jane A. Springer, Ph.D., for a neuropsychological evaluation. Dr. Springer outlined Kelly's primary difficulties as follows:

> Mr. Kelly stated that he returned to full-time work on November 7th. He is working in a different position as a supervisor, which he referred to as a demotion. [Kelly] acknowledged problems with his job performance since his return. He has difficulty remembering important information on the job such as part numbers, names of familiar acquaintances, and recent events/conversations. At home, he also forgets important things and has to rely on his wife to set out his daily medications and reminder lists of things to do. . . .
>
> Mood changes were also acknowledged. [Kelly] stated that he has 'mellowed out,' has no energy, and typically sits on the couch when he is not working. He described other problems with a motivation. . . .

(Administrative Record at 384.) Upon testing, results showed that Kelly had borderline intellectual functioning. Dr. Springer opined that Kelly's "measured IQ is significantly lower than the estimated premorbid level of intellectual functioning."[7] Dr. Springer also found cognitive deficits in the areas of verbal memory and learning, language functions,

---

[5] *See* Administrative Record at 428.

[6] *Id.*

[7] *See* Administrative Record at 386.

speed of processing, reading, and divided attention. Additionally, Dr. Springer found evidence of severe clinical depression. Dr. Springer concluded that:

> The most obvious etiology of his cognitive deficits is his history of a stroke, although his severe level of depression is considered a significant contributing factor that may explain some of his difficulties.

> Despite the evidence of significant cognitive improvement across several measures, [Kelly] continues to demonstrate lingering cognitive deficits. In addition, worsening of his depression was evident and raises serious concerns.

(Administrative Record at 386.) Dr. Springer also opined that Kelly "should consider applying for disability funding or seeking [sic] assistance from Vocational Rehabilitation[.]"[8]

On August 31, 2007, Kelly met with Dr. Joseph T. Nora, M.D., his treating doctor, to discuss Dr. Springer's neuropsychological evaluation. Dr. Nora noted that [Kelly] "still has considerable cognitive deficits and it was advised that he proceed with social security disability."[9] Dr. Nora also noted that Kelly's employer "is splitting off the section [Kelly] was initially in charge of. He does not feel he would be able to carry on a new job. He is accurate in that regard."[10] Dr. Nora recommended psychotherapy to help with depression and adjustment. Dr. Nora concluded that "I know this [is] a very difficult time, unfortunately [Kelly's] stroke robbed him of the things that he was best at. His life was very narrow and centered pretty much just around work. He had been working for this corporation for about 30 years."[11]

---

[8] *Id.* at 387.

[9] *Id.* at 522.

[10] *See* Administrative Record at 522.

[11] *Id.*

On January 10, 2008, Kelly was referred by Disability Determination Services ("DDS") to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Upon examination, Dr. Roland diagnosed Kelly with mood disorder and probable amnesic disorder due to general medical condition (residuals of his stroke). Dr. Roland opined that Kelly "would not be able to handle the stress associated with full time competitive employment."[12]

On January 22, 2008, Kelly was referred by DDS to Dr. Kyle Christiason, M.D., for a physical examination. Upon interview and examination, Dr. Christiason noted that:

> [Kelly] states that his estimated ability to lift is perhaps 50 pounds. He notes that his strength has certainly diminished since his [stroke] but for short term efforts, he states that he still has relatively good strength. Again there is a relative decrease in the right side relative to the left side. He states that he has no limitation with standing or sitting or walking as a rule. . . .

(Administrative Record at 394.) Dr. Christiason diagnosed Kelly with stroke, memory loss, coronary artery disease, hyperlipidemia, and depression.

On February 1, 2008, Dr. Lawrence Staples, M.D., reviewed Kelly's medical records and provided DDS with a physical RFC assessment for Kelly. Dr. Staples determined that Kelly could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staples also determined that Kelly should avoid concentrated exposure to extreme cold and fumes, odors, and gases. Dr. Staples found no manipulative, visual, or communicative limitations.[13]

---

[12] *Id.* at 401-02.

[13] The Court notes that Dr. Staples offered no opinion with regard to Kelly's
(continued...)

On February 22, 2008, Dr. Carole Kazmierski, Ph.D., reviewed Kelly's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Kelly. On the Psychiatric Review Technique assessment, Dr. Kazmierski diagnosed Kelly with probable amnestic disorder, mood disorder due to a general medical condition, and possible alcohol abuse. Dr. Kazmierski determined that Kelly had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Kazmierski also determined that Kelly would have one or two episodes of decompensation per month. On the mental RFC assessment, Dr. Kazmierski determined that Kelly was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Kazmierski concluded that:

> [Kelly] evidences memory deficits that would make it difficult for him to retain complex, detailed information. He is able to understand and remember simple instructions and is capable of performing simple, routine tasks as indicated on this [mental RFC assessment]. Comments about [Kelly's] difficulties with anger management and references to his sarcasm and belligerance [sic] all suggest some moderate restrictions in social functioning. With appropriate and aggressive treatment of his depression, some improvement in work-related functioning would be expected.

---

[13](...continued)
postural limitations. *See* Administrative Record at 352.

(Administrative Record at 335.)

On October 7, 2009, Dr. Hugo Koo, M.D., Kelly's cardiologist, filled out a "Cardiac Residual Functional Capacity Questionnaire" provided by Kelly's attorney. Dr. Koo indicated that he began treating Kelly in 2002. Dr. Koo noted that Kelly has right-side weakness due to stroke and dyspnea at rest and with exertion. Dr. Koo opined that stress on Kelly creates a high risk for further cardiac impairment, making him "incapable" of even "low stress" jobs. Dr. Koo determined that Kelly's prognosis was poor. Dr. Koo found that Kelly could: (1) walk about 2 blocks, (2) sit and stand less than 2 hours in an eight-hour workday, and (3) occasionally lift 10 pounds. Dr. Koo further found that Kelly would need frequent 15 minute work breaks, and his feet would need to be elevated 2 feet for a total of two hours in an eight-hour workday. Lastly, Dr. Koo opined that on average, Kelly would miss work more than four times per month. Dr. Koo concluded that Kelly has an:

> inability to focus with the task at hand. [Right-]sided residual effects after having a stroke [in] August 2006. [He] has emotional outburst[s] and has a poor short term memory. [He] has a lack of cognitive thinking and doesn't understand simple directions.

(Administrative Record at 211.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kelly is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe

13

impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Kelly had not engaged in substantial gainful activity since September 17, 2007. At the second step, the

ALJ concluded from the medical evidence that Kelly had the following severe combination of impairments: status post left cerebral vascular accident with amnestic disorder and residual right-sided weakness, depression, coronary artery disease status post remote myocardial infarctions with catheter intervention, and dilated cardiomyopathy status post ICD implantation. At the third step, the ALJ found that Kelly did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kelly's RFC as follows:

> [Kelly] has the residual functional capacity to perform light work . . . except that he can lift up to 20 pounds occasionally and up to 10 pounds frequently. He can occasionally balance, stoop, crouch, kneel, crawl, and climb. He is limited to simple routine repetitive work, superficial contact with the public, and a regular pace.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that Kelly could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Kelly could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Kelly was not disabled.

### B. Objections Raised by Claimant

Kelly argues that the ALJ erred in three respects. First, Kelly argues that the ALJ failed to properly evaluate his subjective allegations of disability. Second, Kelly argues that the ALJ failed to properly weigh the opinions of Dr. Koo, a treating source. Lastly, Kelly argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Credibility Determination

Kelly argues that the ALJ failed to properly evaluate his subjective allegations of disability. Kelly maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Kelly's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously

considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Kelly's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Kelly's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 15.)

In determining the credibility of Kelly's testimony and subjective allegations of disability, the ALJ not only failed to apply the law, but also failed to properly set forth the law for making credibility determinations under *Polaski* and the Social Security Regulations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Ford*, 518 F.3d at 982; *Baker*, 159 F.3d at 1144; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ barely discusses Kelly's general testimony, and offers nothing in terms of the *Polaski* factors and how those factors relate to Kelly's subjective

testimony and credibility.[14]  The ALJ simply states that Kelly's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[15]  The ALJ's decision provides no reasons for discounting Kelly's testimony other than his allegations are inconsistent with the ALJ's RFC assessment.  *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant).  Because the ALJ's decision lacks any discussion of the reasons for discrediting Kelly, except that his allegations are inconsistent with the ALJ's RFC assessment, and lacks full consideration of all of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Kelly's credibility.  On remand, the ALJ shall set forth in detail his reasons for finding Kelly's subjective allegations to be credible or not credible.  If on remand, the ALJ finds Kelly's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Kelly's subjective allegations and the evidence in the record.

### 2.    *Dr. Koo's Opinions*

Kelly argues that the ALJ improperly gave "little weight" to the opinions of Dr. Koo, a treating source.  In particular, Kelly questions the ALJ's rationale for discounting Dr. Koo's opinions.  Specifically, Kelly asserts that the ALJ failed to follow Social Security Regulations and clearly explain his reasons for giving Dr. Koo's opinions "little weight."  Kelly maintains that while the ALJ "states generally that Dr. Koo's assessment is inconsistent with the other medical evidence of record, he does not articulate any specific inconsistencies that undermine it."[16]

---

[14] *See* Administrative Record at 14 (Two paltry sentences summarizing Kelly's testimony regarding his functional abilities).

[15] *See* Administrative Record at 15.

[16] *See* Kelly's Brief (docket number 10) at 22.

18

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009)

("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

Furthermore, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ weighed Dr. Koo's opinions as follows:

> The assessment completed by [Kelly's] local treating cardiologist signed and dated October 7, 2009 is inconsistent with the above medical record. . . . Because this assessment is inconsistent with the other medical evidence of record, the undersigned gives it little weight.

(Administrative Record at 16.) The ALJ does not address or explain his reasons for rejecting the opinions of Dr. Koo. The ALJ simply summarizes Dr. Koo's opinions from a "Cardiac Residual Functional Capacity Questionnaire" Dr. Koo filled out for Kelly's attorney, and then makes conclusory observations that Dr. Koo's opinions are "inconsistent with the other medical evidence of record[.]" The ALJ does not address, however, any medical evidence in the record, or what inconsistencies there are between Dr. Koo's opinions and the medical evidence in the record, to support his conclusion that Dr. Koo's opinions should be rejected.

An ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. The regulations require an ALJ to give "good reasons" for rejecting statements provided

by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has failed to meet these requirements. The ALJ did not provide any reasons other than conclusory statements, let alone "good reasons," for rejecting the opinions of Dr. Koo. Therefore, the Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Koo's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Koo's opinions and support his reasons with evidence from the record.

### 3. *Hypothetical Question*

Kelly argues, among other things, that the ALJ's hypothetical question to the vocational expert failed to accurately describe his physical and mental impairments. Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)."). In section *V.B.1* and *V.B.2* of this decision, the Court remanded this matter for further consideration of Kelly's subjective allegations of disability, and further consideration of Dr. Koo's opinions, including Dr. Koo's opinions regarding Kelly's physical and mental impairments. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Kelly's limitations based on the medical evidence as a whole,

including the opinions of Dr. Koo and Kelly's own subjective allegations of disability. *See Hunt*, 250 F.3d at 625.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) make a proper credibility determination in this matter; (2) fully and fairly develop the record with regard to the opinions of Dr. Koo, particularly with regard to Kelly's physical and mental impairments; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Kelly's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must consider all of the evidence relating to Kelly's subjective allegations of disability, address his reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Kelly's credibility. The ALJ shall also provide clear reasons for accepting or rejecting Dr. Koo's opinions and support his reasons with evidence from the record. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Kelly's limitations based on the medical evidence as a whole.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 22nd day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA